# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# TAMPA DIVISION

ANTHONY BOULLOSA,

      Plaintiff,

v.                                                        Case No: 8:22-cv-2642-CEH-CPT

EQUIFAX INFORMATION
SERVICES LLC,

      Defendant.

_____/

# O R D E R

This matter is before the Court on Defendant Equifax Information Services LLC's Amended Motion for Summary Judgment (Doc. 133). In the motion, Defendant Equifax Information Services LLC ("Equifax" or "Defendant") requests the Court grant summary judgment in its favor on Plaintiff's claims against Equifax, which are brought under the Fair Credit Reporting Act, 15 U.S.C. § 1681 *et seq.* ("FCRA"). Plaintiff Anthony Boullosa ("Boullosa" or "Plaintiff") filed a response in opposition (Doc. 140), and Equifax replied (Doc. 144). The Court, having considered the motion and being fully advised in the premises, will grant-in-part and deny-in-part Defendant Equifax Information Services LLC's Amended Motion for Summary Judgment.

## I.    BACKGROUND[1]

---

[1] The Court has determined the facts, which are undisputed unless otherwise noted, based on the parties' submissions, including depositions, declarations and exhibits, as well as the

A.    **Stipulated Facts**

At all relevant times, Plaintiff maintained a Wells Fargo credit card ("Credit Account") ending in -5785. Doc. 143 ¶ 1. At all relevant times, Plaintiff maintained a Wells Fargo checking account ("Checking Account") ending in -4095, which he held jointly with his parents. *Id.* ¶ 2. The Checking Account is not an account reported by Wells Fargo to Equifax. *Id.* ¶ 3.

Plaintiff alleges that fraudulent charges occurred on his accounts due to identity theft and fraudulent account takeover. Doc. 60 ¶ 3. The basis of the identity fraud is that on or about June 11, 2021, an unknown person or persons, via telephone, incurred cash advances from Plaintiff's Credit Account, transferred the sum of $5,000.00 (representing two cash advances) from the Credit Account to the Checking Account, then incurred further unauthorized charges on the Checking Account. Doc. 143 ¶ 4. A June 12, 2021 Cash Advance in the amount of $5,000.00 appears on a June 2021 Wells Fargo credit card statement which lists an account number ending in -0471 (the "Credit Card Statement") and deposit of the $5,000.00 advance into the Checking Account appears on a June 2021 Wells Fargo statement for the Checking Account which lists an account number ending in -4095 (the "Checking Account Statement"). *Id.* ¶ 5.

In addition to the $5,000.00 Cash Advance, the Credit Card Statement also lists a $49.99 charge for "Microsoft Xbox Redmond WA" dated June 8, 2021, which

_____

parties' Stipulation of Agreed Material Facts (Doc. 143). For purposes of summary judgment, the Court presents the facts in a light most favorable to the non-moving party as required by Fed. R. Civ. P. 56.

Plaintiff authorized. *Id.* ¶ 6. Plaintiff did not make any payments to his Credit Account after the alleged fraudulent Cash Advance in June 2021. *Id.*

On April 14, 2023, Wells Fargo filed a collections suit against Plaintiff in the County Court of The Thirteenth Judicial Circuit, in and for Hillsborough County, Florida, County Civil Division, Case No. 23-CC-065853, seeking payment of $5,670.62 allegedly due on the Credit Account (hereinafter, "Collections Suit"). *Id.* ¶ 7. Wells Fargo dismissed the Collections Suit with prejudice on October 2, 2023. *Id.* ¶ 8.

Plaintiff is a "consumer" or "debtor" as defined by the FCRA, Section 1681a(c). Doc. 143 ¶ 9. Equifax is a consumer reporting agency ("CRA") as defined by the FCRA, 15 U.S.C. §§ 1681-1681x. *Id.* ¶ 10. Equifax gathers information about consumers from various sources, including banks, collection agencies, and court records, which it uses to create credit files on more than 200 million consumers in the United States. *Id.* Equifax's credit files are used to prepare consumer reports, requested by its subscribers, when they need to evaluate whether to extend credit to a consumer, among other permissible purposes. *Id.* ¶ 11.

Equifax maintains procedures designed to assure the maximum possible accuracy of the information it reports to its subscribers regarding consumers and to reinvestigate information consumers claim is inaccurate. *Id.* Equifax accepts credit information only from those sources of information that it has determined are reliable based upon Equifax's own investigation, the source's reputation in the community, and Equifax's longstanding business relationships with that source. *Id.* ¶ 12. Equifax

requires that each data furnisher sign a comprehensive data furnisher agreement. *Id.*
Such agreements generally require the data furnisher to follow all applicable federal,
state and local laws, including the FCRA, and notify Equifax promptly upon learning
that information furnished is inaccurate or incomplete. *Id.*

Equifax also regularly conducts computerized quality checks before adding
information from a data furnisher to its consumer database. *Id.* ¶ 13. Equifax also
maintains policies and procedures designed to assure that it conducts reinvestigations
of information disputed by consumers. *Id.* A consumer may contact Equifax to request
a consumer disclosure or to dispute information reporting in his or her credit file
(among other reasons) by telephone, mail, or through an Internet portal on Equifax's
website. *Id.* ¶ 14. Upon receipt of a dispute, and after locating the consumer's credit
file, Equifax's process is to open a dispute case (also referred to as a "CCMS case")
that tracks the process of the reinvestigation. *Id.* Equifax's protocol is then to conduct
a review and consider all relevant information including supporting documentation, if
any, provided by the consumer, and a review of the contents of the consumer's credit
file. *Id.* If Equifax can do direct maintenance on its own and update a consumer's file
based on the information provided by the consumer and Equifax's applicable policies,
Equifax will do so. *Id.* If further reinvestigation is required, Equifax's procedure is to
notify the source of the information (referred to as the "data furnisher") of the
consumer's dispute, identify the nature of the consumer's dispute, share the
consumer's dispute letter and any supporting documents provided by the consumer,
and include the consumer's information as it then appears in Equifax's credit file. *Id.*

These communications are generally made through a process wherein Equifax electronically transmits an Automated Consumer Dispute Verification ("ACDV") form using a system called e-OSCAR. *Id.* ¶ 15. The ACDV process allows consumer reporting agencies to communicate with data furnishers through use of an array of pre-defined codes and narrative phrases, and also enables CRAs to transmit to the data furnishers all documents received by the consumer. *Id.* E-OSCAR requires data furnishers to review the images attached to the ACDV before returning a response to the consumer reporting agency. *Id.* This standardized process enhances consistency and reduces misunderstandings, which otherwise would be significant given the large number of disputes processed by Equifax and the other CRAs every day. *Id.*

When the data furnisher receives the dispute from Equifax, it is generally required, both by its contract with Equifax, and the FCRA, to conduct its own investigation and report the results back to Equifax. *Id.* ¶ 16. If the data furnisher advises Equifax to delete or otherwise update or modify the account information, then Equifax, after reviewing the data furnisher's response, in conjunction with its own policies and procedures, takes the requisite action to ensure accurate reporting of the disputed information. *Id.* Upon completion of its reinvestigation, Equifax sends the consumer its reinvestigation results along with a summary of the consumer's rights under the FCRA, additional steps the consumer may take if they believe their dispute has not been resolved, and a description of the procedures used to reinvestigate the dispute, if requested by the consumer. *Id.*

1. <u>First Dispute</u>

Around January 17, 2022, Plaintiff obtained copies of his consumer disclosure report from Equifax. *Id.* ¶ 17. Equifax reported the Credit Account as owed by Plaintiff personally with a balance due in the amount of $5,218, an amount past due of $190, and a status of "not more than two payments past due" as of January 2022. *Id.* ¶ 18. Plaintiff acknowledges that he does not know what portion of the reported balance was attributable to the transactions he authorized versus attributable to fraud, although he asserts such amount was a "miniscule portion." *Id.*

On or about January 20, 2022, Plaintiff sent a letter to Equifax ("First Dispute"), disputing the Credit Account. *Id.* ¶ 19. Plaintiff's First Dispute advised Equifax that the Credit Account's balance and payment history were incorrect due to the alleged fraud and requested that Equifax update Plaintiff's credit report and credit file. *Id.* ¶ 20. Plaintiff stated that he "believe[s] the correct balance to be approximately $0" and that "[t]his is the balance I believe I owe on this account after subtracting out the fraudulently incurred charge(s)." *Id.* Plaintiff's First Dispute included copies of Plaintiff's social security card, Florida driver's license, Tampa Police Department police report number 2021-851647 ("Police Report") dated August 2021, which also included the Credit Card Statement that displayed the allegedly fraudulent cash advance and the Checking Account statement showing the cash advance deposit. *Id.* ¶ 21.

On January 25, 2022, Equifax received Plaintiff's First Dispute. *Id.* ¶ 22. Upon receipt of the First Dispute, and per Equifax policy, Equifax opened a CCMS case to track the process of the investigation. *Id.* ¶ 23. Equifax's dispute agent acknowledged

receipt of the Police Report enclosed with the First Dispute in Equifax's "Internal Comments" associated with the First Dispute. *Id.* ¶ 24. Equifax communicated Plaintiff's First Dispute to Wells Fargo. *Id.* ¶ 25.

Wells Fargo allegedly conducted its own investigation and advised Equifax that the Credit Account was reporting accurately. *Id.* ¶ 26. Equifax completed its reinvestigation and timely sent Plaintiff the results of its reinvestigation on February 12, 2022. *Id.* ¶ 27. In response to Plaintiff's First Dispute, Equifax verified the Credit Account's balance and continued to report the Credit Account on Plaintiff's credit report and credit file as maintained by Equifax with an increased balance of $5,302, an increased amount past due of $329, and a status of "60-80 days past due." *Id.* ¶ 28.

2. Second Dispute

On or about May 2, 2022, Plaintiff sent a second letter ("Second Dispute"), with the assistance of his attorneys, to Equifax again disputing Equifax's reporting of the Credit Account. *Id.* ¶ 29; Doc. 133-5. The Second Dispute identified the Credit Account's full account number. Doc. 143 ¶ 30. Plaintiff enclosed a copy of Plaintiff's October 2021 CFPB Identity Theft Report ending in -334 with his Second Dispute. *Id.* ¶ 31. Plaintiff's Second Dispute also enclosed a November 2021 affidavit of Boullosa describing the alleged fraud, its amount, its relationship to the Checking and Credit Accounts, and Plaintiff's notarized signature. *Id.* ¶ 32.

Plaintiff's Second Dispute enclosed a copy of the August 2021 Police Report previously sent with the First Dispute. Doc. 133-5 at 6. Plaintiff's Second Dispute enclosed an April 22, 2022 copy of Plaintiff's Police Report that contained additional

narrative text and pages by the Tampa Police Department. *Id.* at 30–52; Doc. 143 ¶ 34.
Plaintiff's Second Dispute again challenged, due to the alleged fraud, the inaccurate
and misleading information reflected on his credit report including a balance of $5,302,
a past-due balance of $329, and a derogatory payment history. Doc. 143 ¶ 35. Plaintiff
requested that Equifax update and correct Plaintiff's erroneous credit report and credit
file.

Equifax received Plaintiff's Second Dispute on May 11, 2022. *Id.* ¶ 36. On May
14, 2022, Equifax issued Plaintiff a letter stating that Equifax refused to block reporting
of the Credit Account on Plaintiff's credit reports and requested that Plaintiff "provide
proof of your identity, the specific information that is the result of identity theft, and a
copy of your complete and submitted Identity Theft Report with the Federal Trade
Commission . . . or police report regarding the identity theft." *Id.* ¶ 37. On May 14,
2022, Equifax's dispute agent acknowledged receipt of the police reports enclosed with
the Second Dispute and determined the same to be "invalid," and noted the same in
Equifax's "Internal Comments" associated with the Second Dispute. *Id.* ¶ 38. The
Equifax dispute agent's Internal Comments did not indicate the reasoning for
invalidity. *Id.* ¶ 39.

Per its policy, Equifax opened a CCMS case to track the process of the
investigation. *Id.* ¶ 40. The Equifax agent who reviewed Plaintiff's Second Dispute
contacted Wells Fargo via ACDV as to the Credit Account. *Id.* ¶ 41. The Equifax agent
who reviewed Plaintiff's Second Dispute also contacted Wells Fargo via ACDV as to

8

a credit-reported Wells Fargo Account not at issue in this action and which bore a $0.00 balance at the time of the ACDV. *Id.*

Wells Fargo allegedly conducted its own investigation and advised Equifax that the Credit Account was reporting accurately. *Id.* ¶ 42. Equifax completed its reinvestigation and timely sent Plaintiff the results of its reinvestigation on May 28, 2022. *Id.* ¶ 43. In its reinvestigation results, Equifax verified the Credit Account's balance and continued to report the Credit Account on Plaintiff's credit report and credit file as maintained by Equifax with an increased balance of $5,576, an increased amount past due of $758, and a status of "over 120 days past due." *Id.* ¶ 44.

       3. <u>Third Dispute</u>

On or about June 28, 2022, Plaintiff sent a third letter ("Third Dispute"), with the assistance of his attorneys, to Equifax again disputing Equifax's reporting of the Credit Account. *Id.* ¶ 45. Plaintiff's Third Dispute contained all enclosures sent with the Second Dispute and added: a hotel receipt for the period of June 13, 2021–June 18, 2021; his workplace expense report June 13, 2021–June 18, 2021; two receipts for purchases on June 14, 2021; and a notarized Declaration of David Quintero who was Plaintiff's boss. *Id.* ¶ 46. Plaintiff's Third Dispute also contained allegations concerning Plaintiff's physical whereabouts as of the date of the fraudulent cash advance from the Credit Account and charges on the Checking Account. *Id.* ¶ 47. Plaintiff's Third Dispute requested that Equifax update Plaintiff's credit report and credit file. *Id.* ¶ 48.

On July 8, 2022 Equifax received Plaintiff's Third Dispute. *Id.* ¶ 49. On July 8, 2022, Equifax issued Plaintiff a letter stating that Equifax had received the Third

Dispute and that Equifax was "currently processing your previously submitted dispute for [the Credit Account]; we will not be conducting further investigation into [the Credit Account] at this time." *Id.* ¶ 50; Doc. 133-10 at 3. On July 8, 2022, Equifax's dispute agent determined all police reports associated with the Third Dispute to be "invalid due to key factor missing" and notated the same in Equifax's "Internal Comments" associated with the Third Dispute. Doc. 143¶ 51. The Equifax dispute agent's Internal Comments did not indicate the allegedly missing key factor. *Id.* ¶ 52.

Equifax sent ACDVs to Wells Fargo in response to the fraud referrals received from Experian and Trans Union regarding the Credit Account. *Id.* ¶ 53. The Equifax agent who reviewed Plaintiff's Third Dispute did not contact Wells Fargo via ACDV as to the Credit Account. *Id.* Wells Fargo responded to the ACDVs sent by Equifax in response to the fraud referrals received from Experian and Trans Union and verified the Credit Account was accurately reporting with a balance owed in excess of $5,500. *Id.* ¶ 54. Wells Fargo did not conduct its own investigation regarding the Third Dispute and did not advise Equifax that the Credit Account was reporting accurately in response to the Third Dispute. *Id.*

Equifax completed its reinvestigation and timely sent Plaintiff the results of its reinvestigation on July 8, 2022. *Id.* ¶ 55. In its reinvestigation results, Equifax verified the Credit Account's balance and continued to report the Credit Account on Plaintiff's credit report and credit file as maintained by Equifax with an increased balance of $5,670, an increased amount past due of $5,670, and a status of "Charge Off." *Id.* ¶ 56.

10

### B. Litigation

In November 2022, Plaintiff initiated this action against Wells Fargo and the three credit reporting agencies, Equifax, Experian, and TransUnion. Doc. 1. In a six-count Second Amended Complaint filed June 5, 2023, Plaintiff sued Defendants for violations of the Florida Consumer Collection Practices Act ("FCCPA") and the Fair Credit Reporting Act, 15 U.S.C. § 1681, *et seq.* ("FCRA").[2] Doc. 60. The CRAs, including Defendant Equifax, are sued in Counts Four (violation of 15 U.S.C. § 1681e(b)), Five (violation of 15 U.S.C. § 1681i, *et seq.*), and Six (violation of 15 U.S.C. § 1681c-2, *et seq.*) of the Second Amended Complaint. Plaintiff alleges damages of emotional distress, anxiety, inconvenience, frustration, annoyance, fear and confusion. He claims he has suffered reputational harm and was deterred from making credit applications because of Defendant's continued derogatory account reporting. He seeks actual damages, statutory damages, punitive damages, and attorney's fees. Other than admitting it is a credit reporting agency subject to the provisions of the FCRA, Equifax denied Plaintiff's allegations in Counts Four, Five, and Six. Doc. 64. Equifax raised the affirmative defense that Plaintiff failed to mitigate his damages.

### C. Statutory Claims

#### 1. 15 U.S.C. § 1681e(b)

In Count Four (Doc. 60 ¶¶ 257–65), Plaintiff sues Equifax for violation of Section 1681e(b) of the FCRA, which requires that "[w]henever a [CRA] prepares a

---

[2] Plaintiff has since settled his claims with Wells Fargo, TransUnion, and Experian, and these Defendants have been dismissed from the litigation. Docs. 88, 95, 103.

consumer report it shall follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates." 15 U.S.C. § 1681e(b). Plaintiff alleges in Count Four that despite Plaintiff repeatedly telling Equifax that the charges were a result of identity fraud and that the consumer reports reflecting a past-due balance and a delinquent account were inaccurate, Equifax failed to establish and follow reasonable procedures and continued to report the account with a past-due balance. Plaintiff alleges that Equifax failed to establish or follow procedures to assure maximum accuracy of Plaintiff's credit reports and credit files when re-investigating Plaintiff's disputes. Plaintiff claims he submitted affidavits and police reports regarding the identity theft, but Equifax refused to delete the account as showing delinquent. Plaintiff alleges Equifax's conduct was negligent and/or willful and caused Plaintiff harm.

### 2.  15 U.S.C. § 1681i

In Count Five (Doc. 60 ¶¶ 266–85), Plaintiff alleges that Equifax violated Section 1681i in failing to conduct a reasonable reinvestigation of Plaintiff's disputes to determine whether the disputed information was inaccurate and by failing to subsequently update the inaccurate information in Plaintiff's credit reports. Plaintiff alleges that Equifax's reinvestigation was not conducted in good faith because it merely copied and relied on the inaccurate information received from Wells Fargo. Plaintiff also alleges Equifax failed to review and consider all relevant information received in Plaintiff's disputes, which showed that the alleged balance was a result of identity theft and fraud, and Equifax failed to update or delete any information that

was the subject of Plaintiff's disputes that was found to be inaccurate or that could not

be verified. Plaintiff alleges these failures were willful and/or negligent. The specific

provisions at issue under Section 1681i are as follows:

> (a) Reinvestigations of disputed information
>     (1) Reinvestigation required
>     (A) In general
>
>> [I]f the completeness or accuracy of any item of information contained in a consumer's file at a consumer reporting agency is disputed by the consumer and the consumer notifies the agency directly, or indirectly through a reseller, of such dispute, the agency shall, free of charge, conduct a reasonable reinvestigation to determine whether the disputed information is inaccurate and record the current status of the disputed information, or delete the item from the file in accordance with paragraph (5), before the end of the 30-day period beginning on the date on which the agency receives the notice of the dispute from the consumer or reseller.
>
> . . .
>
> 4) Consideration of consumer information
>
>> In conducting any reinvestigation under paragraph (1) with respect to disputed information in the file of any consumer, the consumer reporting agency shall review and consider all relevant information submitted by the consumer in the period described in paragraph (1)(A) with respect to such disputed information.
>
> (5) Treatment of inaccurate or unverifiable information
> (A) In general
>
>> If, after any reinvestigation under paragraph (1) of any information disputed by a consumer, an item of the information is found to be inaccurate or incomplete or cannot be verified, the consumer reporting agency shall--
>>
>>> (i) promptly delete that item of information from the file of the consumer, or modify that item of information, as appropriate, based on the results of the reinvestigation; and
>>>
>>> (ii) promptly notify the furnisher of that information that the information has been modified or deleted from the file of the consumer.

15 U.S.C. § 1681i(a)(1), (4), (5). Plaintiff submits that Equifax never sought additional documents from Wells Fargo to corroborate the information furnished by Wells Fargo. As a result of Equifax's conduct and inaction, Plaintiff asserts he has suffered damage to his credit reputation and credit worthiness.

### 3. 15 U.S.C. § 1681c-2

In Count Six (Doc. 60 ¶¶ 286–94), Plaintiff sues Equifax for alleged violations of Section 1681c-2 in failing to properly block the disputed and inaccurate fraudulent information after receiving Plaintiff's First, Second, and Third Disputes. Plaintiff states that he provided appropriate proof of his identity, copies of the identity theft police reports, the disputed fraudulent information, and that the disputed transaction was not authorized by him. He alleges that, notwithstanding providing this information, Equifax refused to apply a block in violation of Section 1681c-2, which requires a CRA to "block the reporting of any information in the file of a consumer that the consumer identifies as information that resulted from an alleged identity theft, not later than 4 business days after the date of receipt by such agency of-- (1) appropriate proof of the identity of the consumer; (2) a copy of an identity theft report; (3) the identification of such information by the consumer; and (4) a statement by the consumer that the information is not information relating to any transaction by the consumer." 15 U.S.C. § 1681c-2(a). Plaintiff alleges that Equifax's conduct was negligent and/or willful and that he was damaged as a result.

## II.    LEGAL STANDARD

Summary judgment is appropriate when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The moving party bears the initial burden of stating the basis for its motion and identifying those portions of the record demonstrating the absence of genuine issues of material fact. *Celotex*, 477 U.S. at 323; *Hickson Corp. v. N. Crossarm Co.*, 357 F.3d 1256, 1259–60 (11th Cir. 2004). That burden can be discharged if the moving party can show the court that there is "an absence of evidence to support the nonmoving party's case." *Celotex*, 477 U.S. at 325.

When the moving party has discharged its burden, the nonmoving party must then designate specific facts showing that there is a genuine issue of material fact. *Id.* at 324. Issues of fact are "genuine only if a reasonable jury, considering the evidence present, could find for the nonmoving party," and a fact is "material" if it may affect the outcome of the suit under governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–49 (1986). In determining whether a genuine issue of material fact exists, the court must consider all the evidence in the light most favorable to the nonmoving party. *Celotex*, 477 U.S. at 323. However, a party cannot defeat summary judgment by relying upon conclusory allegations. *See Hill v. Oil Dri Corp. of Ga.*, 198 F. App'x 852, 858 (11th Cir. 2006).

### III.    FCRA

"Congress enacted FCRA in 1970 to ensure fair and accurate credit reporting, promote efficiency in the banking system, and protect consumer privacy. *Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 52 (2007). The FCRA creates a private right of action against consumer reporting agencies for the negligent, *see* 15 U.S.C. § 1681o, or willful, *see* 15 U.S.C. § 1681n, violation of any duty imposed under the statute." *Collins v. Experian Info. Sols., Inc.*, 775 F.3d 1330, 1333 (11th Cir. 2015) (internal quotation marks omitted).

### IV.    DISCUSSION

Equifax argues it is entitled to summary judgment on all of Plaintiff's claims because it contends that its reporting of Plaintiff's account was accurate. Even if Plaintiff can show an inaccuracy, Equifax submits Plaintiff's claims still fail because Equifax's policies and reinvestigations were reasonable; Equifax did not act willfully; and Plaintiff suffered no damage that was caused by Equifax. Plaintiff argues disputed issues of material fact exist as to each of Equifax's arguments precluding summary judgment.

#### A. Accuracy of the Information

"Section 1681e provides that in preparing a consumer report, a consumer reporting agency 'shall follow reasonable procedures to assure maximum possible accuracy' about an individual." *Losch v. Nationstar Mortg. LLC*, 995 F.3d 937, 944 (11th Cir. 2021) (quoting 15 U.S.C. § 1681e(b)). To establish a violation under § 1681e, a

16

plaintiff must show that the CRA's report contained factually inaccurate information, that the procedures it took in preparing and distributing the report were not "reasonable," and that damages followed as a result. *Losch*, 995 F.3d at 944. Similarly, a claim under Section 1681i requires a threshold finding that information reported was inaccurate.

Equifax argues that the information reported on Plaintiff's account was objectively accurate because Plaintiff admits that at least $49.99 on the credit account was an authorized charge for which he did not pay anything on the account. Thus, Equifax submits that it accurately reported that Plaintiff had an outstanding balance overdue on his Wells Fargo credit account that he had not paid. Although Plaintiff requested that Equifax zero out the entire balance of the disputed account, Plaintiff testified at his deposition that the $49.99 charge for "Microsoft Xbox Redmond WA" on June 8, 2021, was an authorized charge. Doc. 133-13 at 112–13. Despite acknowledging this authorized charge, Plaintiff did not make any payment toward the Credit Account after June 2021. *Id.* at 85.

The FCRA "requires 'maximum possible accuracy.'" *Holden v. Holiday Inn Club Vacations Inc.*, 98 F.4th 1359, 1367 (11th Cir. 2024) (quoting *Erickson v. First Advantage Background Servs. Corp.*, 981 F.3d 1246, 1251 (11th Cir. 2020)). The Eleventh Circuit recently clarified the meaning of "accuracy," in the FCRA context, explaining that "accuracy" means "freedom from mistake or error" and "being free from a misunderstanding of the meaning or implication of something and not deviating from truth or accuracy." *Holden*, 98 F.4th at 1367 (citations and internal quotation marks

omitted). "[A]n FCRA claim alleges an 'inaccuracy' so long as the challenged information is objectively and readily verifiable." *Holden*, 98 F.4th at 1367-68 (quoting *Sessa v. Trans Union*, LLC, 74 F.4th 38, 40 (2d Cir. 2023)). Equifax contends that the information was not objectively and readily verifiable because Plaintiff admitted a portion of the balance was for charges that he incurred and were therefore authorized. In response, Plaintiff argues the Credit Account's balance, past-due amount, and status were undeniably objectively and readily verifiable as the entire balance of $5,389.47, except $49.99, consisted of fraudulent and unauthorized transactions. The *Holden* court instructs us that "when evaluating whether a report is accurate under the [FCRA], we look to the objectively reasonable interpretations of the report" such that, "a report must be factually incorrect, objectively likely to mislead its intended user, or both to violate the maximal accuracy standard of the [FCRA]." *Holden*, 98 F.4th at 1367-68 (citing *Erickson*, 981 F.3d at 1252).

At a minimum, a question of fact exists as to whether the $5,000 cash advance (which was the majority of the reported unpaid balance) was unauthorized and a result of identity theft or fraud. While Equifax argues that it was not inaccurate to report that Plaintiff had an outstanding balance on his Credit Account, Equifax does not attempt to represent that the amount it reported as being owed and/or overdue was accurate. In fact, Equifax's report showed not only that Plaintiff had an overdue balance, but also showed the total amount owed, the amount past due, and the number of payments past due. Doc. 143 ¶¶ 18, 28, 44, 56. In a light favorable to Plaintiff, Equifax's credit report reflecting that the unpaid balance was owed by Plaintiff would likely mislead

any user of the credit information that Plaintiff was responsible for the entire balance, which would be inaccurate. *See, e.g.*, *Losch*, 995 F.3d at 945 (CRA's report was still factually inaccurate where CRA reported more than just the existence of a debt, but also the balance that plaintiff owed, the amount past due, and how long past due where that information was untrue). Plaintiff has satisfied the threshold finding that the credit report contained inaccurate information.

### B. Reasonableness of Equifax's Procedures

Equifax submits that even if Plaintiff can show the credit report contained inaccurate information, Plaintiff's claim asserting a violation under § 1681e(b) nevertheless fails because Equifax maintained reasonable procedures. Doc. 133 at 17. In relevant part, the FCRA requires a CRA to "*follow* reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates." 15 U.S.C. § 1681e(b) (emphasis added). Thus, the CRA must not only have reasonable procedures but also must follow them. Equifax argues it has in place a stringent standard of security checks for a furnisher of information, such as Wells Fargo, to undergo before being qualified as an Equifax furnisher. Equifax required Wells Fargo to (1) certify that it will comply with the FCRA; (2) provide accurate data; (3) update the data regularly; and (4) comply with Equifax's standard procedures for furnishing, updating, and verifying information. Cobb. Decl. ¶ 10. Equifax argues that Plaintiff offers no evidence that these policies were unreasonable. In response to Equifax's argument, Plaintiff submits that Equifax failed to follow reasonable policies because it gave very little to no consideration to Plaintiff's

submitted documents, verification, physical proof, affirmations, narrative, and police reports concerning fraud. Doc. 140 at 15.

To defeat summary judgment on a section 1681e(b) claim, Plaintiff "must [have] minimally present[ed] some evidence from which a trier of fact can infer that the consumer reporting agency failed to follow reasonable procedures in preparing a credit report." *Rumbough v. Experian Info. Sols., Inc.*, No. 612CV811ORL22DAB, 2014 WL 11427967, at *8 (M.D. Fla. Jan. 9, 2014), *aff'd*, 626 F. App'x 224 (11th Cir. 2015) (citing *Stewart v. Credit Bureau*, 734 F.2d 47, 51 (D.C. Cir. 1984); *Whelan v. Trans Union Credit Reporting Agency*, 862 F. Supp. 824, 829 (E.D.N.Y. 1994)). Here, Equifax's representative testified Equifax never requested another police report from Plaintiff, although the agent documented the report as being invalid, nor was Plaintiff ever advised that the submitted police report was invalid. Doc. 155 at 28, 52. She further testified that Equifax does not have a policy of contacting police officers listed in the report whether the report is deemed valid or invalid. *Id.* at 103–05. Plaintiff also points to the fact that Equifax never considered Plaintiff's submitted identity fraud report filed with the Consumer Financial Protection Bureau; never attributed any significance to Plaintiff's signing of an affidavit concerning the fraud; never considered Plaintiff's receipts and expense report verifying his location which were submitted with his third dispute; did not consider the statement of Plaintiff's boss verifying his location at the time of the fraud; did not send any ACDV or communication to Wells Fargo in relation to Plaintiff's third dispute and instead unilaterally verified the accuracy of the credit account notwithstanding the additional information submitted with the third

dispute; and failed to consider documents submitted with prior disputes when analyzing subsequent disputes. Doc. 140 at 14. For its part, Equifax testified that it relied on Wells Fargo, who it contends was in the better position to know the validity of the debt. Given the evidence provided by Plaintiff, a genuine issue of material fact exists as to whether Equifax followed reasonable procedures to assure the maximum possible accuracy of Plaintiff's credit report. Summary judgment is due to be denied on this claim.

### C. Reinvestigation Claim under 15 U.S.C. § 1681i

Section 1681i imposes on a CRA the duty of conducting a reasonable reinvestigation of disputed information in a consumer's credit file. In relevant part, this provision states:

> if the completeness or accuracy of any item of information contained in a consumer's file at a consumer reporting agency is disputed by the consumer and the consumer notifies the agency directly, or indirectly through a reseller, of such dispute, the agency shall, free of charge, conduct a *reasonable reinvestigation to determine whether the disputed information is inaccurate* and record the current status of the disputed information, or delete the item from the file in accordance with paragraph (5), before the end of the 30-day period beginning on the date on which the agency receives the notice of the dispute from the consumer or reseller.

15 U.S.C. § 1681i(a)(1)(A) (emphasis added). As part of this investigation, the agency is required to notify the furnisher of the information that it has been disputed. *Marchisio v. Carrington Mortg. Servs., LLC*, 919 F.3d 1288, 1301 (11th Cir. 2019) (citing 15 U.S.C. § 1681i(a)(2)). Whether a CRA acted reasonably under the FCRA "will be a jury

question in the overwhelming majority of cases." *Losch*, 995 F.3d at 944 (11th Cir. 2021).

Significantly, in conducting the reinvestigation, the CRA "shall review and consider all relevant information submitted by the consumer . . . with respect to [such] information." 15 U.S.C. § 1681i(a)(4). As discussed above, Plaintiff argues that Equifax failed to consider many of the documents submitted to support his position that he was the victim of fraud and that the charges were not his. While Equifax takes the position that the submitted police report was "invalid," Plaintiff was never told it was invalid, nor was he asked to submit a different police report. Doc. 155 at 28, 52. Moreover, Equifax did not make any attempt to contact the police officers listed in the report. Equifax contends that Plaintiff's disputes did not provide sufficient information comporting with Equifax's applicable policies to automatically update or suppress the Credit Account. Doc. 133-1 ¶ 12, 34, 37, 39. Equifax turned to and relied on Wells Fargo to verify the account. Equifax argues that Wells Fargo was in the better position to determine whether the account was fraudulent or not. But in so doing, it is apparent, that Equifax failed to consider potentially relevant supplemental information submitted by Plaintiff (*i.e.*, police report, Plaintiff's affidavit, statement of Plaintiff's boss, expense reports) which contradicted Wells Fargo's verification of the debt. And Equifax failed to provide some of this information to Wells Fargo, at least with regard to the third dispute. Equifax did not send an ACDV or communication to Wells Fargo in relation to Plaintiff's third dispute despite the fact that the third dispute included new information and despite the FCRA's requirement that the CRA's notice to the

22

furnisher must include "all relevant information regarding the dispute" that the CRA
has received from the consumer. 15 U.S.C. § 1681i(a)(2). On these facts, whether
Equifax's reinvestigation was reasonable is a question for the jury. Equifax's motion
for summary judgment on this claim is due to be denied.

### D. Failure to Block Disputed Info under 15 U.S.C. § 1681c-2

When a consumer identifies information in the consumer's file that resulted
from an alleged identity theft, a CRA "shall block the reporting of [such] information
in the file of [the] consumer" within 4 business days after the date of receipt by the
CRA of: "(1) appropriate proof of the identity of the consumer; (2) a copy of an identity
theft report; (3) the identification of such information by the consumer; and (4) a
statement by the consumer that the information is not information relating to any
transaction by the consumer." 15 U.S.C. § 1681c-2(a). In his Second Amended
Complaint, Plaintiff alleges that despite Equifax receiving information from him to
satisfy the requirements of this provision, Equifax refused to block the disputed
information. Doc. 60 ¶¶ 288, 289.

Equifax argues it is entitled to summary judgment on this claim. In support,
Equifax asserts that it was not obligated to block the information under this provision
because Plaintiff never submitted an "identity theft report." Further, Equifax contends
that what was submitted by Plaintiff did not qualify as an identity theft report because
it was not generated using an automated process, it did not include the required leading
statement, it did not include an FTC identity theft report number on the upper right
side of the document, it did not include a list of fraudulent accounts that included the

name and full or partial account number, and it did not include the date Plaintiff discovered the fraud. Doc. 133 at 20.

Plaintiff does not address Equifax's argument regarding his failure to provide a qualifying identity theft report. "When a party fails to respond to an argument or otherwise address a claim, the Court deems such argument or claim abandoned." *Jones v. Bank of Am., N.A.*, 564 F. App'x 432, 434 (11th Cir. 2014) (citation omitted). The only statement in Plaintiff's response pertaining to § 1681c-2 is that Equifax violated this section "multiple times by failing to notify Experian and Trans Union of Plaintiff's fraud dispute." Doc. 140 at 18. This theory is not raised in Count Six of the Plaintiff's Second Amended Complaint and does not demonstrate Plaintiff met the requirements of Section 1681c-2 to trigger Equifax's obligation to block the disputed information.

In support of his second and third disputes, Plaintiff submitted a Consumer Financial Protection Bureau (CFPB) form complaint. *See* Docs. 133-5 at 25-27, 133-9 at 70-72. It is not apparent from the Court's review of the CFPB form, however, that it is an "identity theft report," as opposed to being a general consumer complaint form. Additionally, the form was not signed by Plaintiff under penalty of perjury or otherwise.

To challenge a CRA's failure to block information based on identity theft, a consumer must have provided the CRA a copy of an identity theft report. *See* 15 U.S.C. § 1681c-2(a)(2). Section 1681a defines an "identity theft report" to mean, at a minimum, a report—

> (A) that alleges an identity theft;
> (B) that is a copy of an official, valid report filed by a consumer with an appropriate Federal, State, or local law enforcement agency, including the United States Postal Inspection Service, or such other government agency deemed appropriate by the Bureau; and
> (C) the filing of which subjects the person filing the report to criminal penalties relating to the filing of false information if, in fact, the information in the report is false.

15 U.S.C. § 1681a(q)(4). Although Plaintiff provided Equifax with a CFPB complaint and a police report, Plaintiff has not argued or otherwise demonstrated either form satisfies the definition of "identity theft report" as set forth in the statute. Given Plaintiff's failure to respond to this issue or otherwise come forward with evidence to refute the claim that a qualified identity theft report was not provided, Equifax is entitled to summary judgment as to Plaintiff's claim in Count Six for violation of Section 1681c-2.

### E. Willfulness of Equifax's Actions

Plaintiff sues Equifax for both negligent and willful FCRA violations. The Supreme Court has concluded that "reckless disregard of a requirement of FCRA would qualify as a willful violation within the meaning of § 1681n(a)." *Safeco*, 551 U.S. at 71. To establish a willful failure to comply with § 1681e(b), a plaintiff must show that the CRA either knowingly or recklessly violated the statute. *Williams v. First Advantage LNS Screening Sols. Inc.*, 947 F.3d 735, 745 (11th Cir. 2020) (citing *Pedro v. Equifax, Inc.*, 868 F.3d 1275, 1280 (11th Cir. 2017)). "Recklessness" generally requires "action entailing an unjustifiably high risk of harm that is either known or so obvious that it should be known." *Williams*, 947 F.3d at 745 (quoting *Safeco*, 551 U.S. at 68).

25

Thus, a CRA acts in reckless disregard of FCRA requirements if its "action is not only a violation under a reasonable reading of the statute's terms, but shows that the company ran a risk of violating the law substantially greater than the risk associated with a reading that was merely careless." *Safeco*, 511 U.S. at 69.

Equifax argues it is entitled to summary judgment on Plaintiff's willfulness claims because Eleventh Circuit caselaw declines to find willfulness where a CRA contacts the data furnisher in response to a customer dispute. Doc. 144 at 6 (citing *Losch*, 995 F.3d at 947). In *Losch*, the court rejected the plaintiff's willfulness challenge, noting a CRA's failure to take no other steps than to contact the data furnisher may be negligent but does not rise to the level of being willful or reckless. *See Losch*, 995 F.3d at 947. Here, Equifax contacted Wells Fargo and sent ACDVs following Plaintiff's first and second disputes. Regarding Plaintiff's third dispute, however, it is undisputed that Equifax did not forward Plaintiff's third dispute and supporting documentation to Wells Fargo. Equifax acknowledges that the third dispute included documents not previously provided, but it did not provide that additional information to Wells Fargo, nor did it submit an ACDV to Wells Fargo based on the third dispute. Instead, it sent a letter to Plaintiff stating it would not be conducting further investigation because it was "currently processing your previously submitted dispute for this account(s)." Doc. 133-10 at 3. Plaintiff contends that Equifax's claim that his previous second dispute was still under investigation is disingenuous where Equifax had already sent a letter to Plaintiff regarding the results of its reinvestigation of the second dispute on May 28, 2022. *See* Doc. 143 ¶ 43.

26

Equifax represents in its motion that it was in the process of reinvestigating fraud referrals it received from Experian and Trans Union and therefore sent Plaintiff the letter to advise that it would not be conducting further investigation. *See* Doc. 133 at 10. However, the letter to Plaintiff states that Equifax is still processing the prior dispute (Doc. 133-10 at 3), which, as noted above, had already been completed. Plaintiff argues that whether Equifax acted with recklessness or willfulness is a question for the jury where Equifax misrepresented that an investigation was ongoing and relied on that falsehood as a basis for not investigating the third dispute, disregarding Plaintiff's documents submitted with the third dispute, and failing to contact Wells Fargo in relation to the third dispute. On the record before the Court, disputed issues of material fact exist regarding whether Equifax violated Sections 1681e(b) and 1681i of the FCRA and whether those violations were willful.

### F. Plaintiff's Damages

Equifax argues it is entitled to summary judgment because Plaintiff is unable to show he suffered any actual damages that were caused by Equifax's violation of the FCRA.[3] Specifically, Equifax contends that each of Plaintiff's credit denials are tied to the other dismissed Defendants. Regarding Plaintiff's claim that he was deterred from

---

[3] If Plaintiff can establish that Equifax willfully violated the FCRA, he need not show actual damages, but rather, he "may elect to receive actual damages or statutory damages, but not both," in addition to punitive damages, costs of the litigation, and reasonable attorney's fees. *Harris v. Mexican Specialty Foods, Inc.*, 564 F.3d 1301, 1313 (11th Cir. 2009) (citing 15 U.S.C. § 1681n(a)). *See also Santos v. Healthcare Revenue Recovery Grp., LLC.*, 90 F.4th 1144, 1152 (11th Cir. 2024) (holding that consumers who establish a willful FCRA violation may seek statutory damages under the second option of section 1681n(a)(1)(A) without showing actual damages).

applying for a new mortgage loan, Equifax argues that such damages are unrecoverable where the loan was intended for an investment property. Doc. 133 at 23 n.11 (citing *Hill v. Ocwen Loan Servicing*, 369 F. Supp. 3d 1324, 1337 (N.D. Ga. 2019)). As for Plaintiff's claim of emotional damages, Equifax argues these are likewise unsupported by the evidence or were caused mostly due to the conduct of Wells Fargo. Equifax contends that Plaintiff does not testify that his emotional distress was caused by Equifax, nor do his medical records tie his claimed damages to any negative credit-reporting by Equifax. Doc. 133 at 22–25. Equifax argues that even if Plaintiff could somehow prove Equifax's actions caused him damage, Plaintiff failed to mitigate his damages.

Plaintiff first responds that Equifax misinterprets the finding in *Hill v. Ocwen*. Plaintiff is correct that the *Hill* court acknowledged that "[a]n individual who conducts business in his or her own name is not completely excluded from the protections of the FCRA." *Hill*, 369 F. Supp. 3d at 1337. Further, Plaintiff contends Equifax fails to come forward with evidence that the credit reports that would have been accessed for such a potential purchase would have been non-consumer reports. In that regard, Plaintiff argues that Equifax fails to show that Plaintiff would have sought financing in the name of a business and not a personal capacity. While that may be the case, the Plaintiff's testimony on the issue of credit-deterrence is thin as well. Because questions of fact exist on this record regarding Plaintiff's claim for damages associated with his being deterred from applying for a home loan, summary judgment is due to be denied on this issue.

Regarding Plaintiff's claim for emotional damages, he submits that he has
testified to significant and concretely-supported non-economic damages attributable to
Equifax. Courts in this circuit have recognized that an FCRA plaintiff may recover for
emotional distress damages even in the absence of physical injury or out-of-pocket
expenses. *See Hill*, 369 F. Supp. 3d at 1337 (emotional distress damages constitute
actual damages under the FCRA) (collecting cases); *see also Ball v. Navient Sols., LLC*,
No. 1:16-CV-853-WKW-DAB, 2018 WL 1413393, at *4 (M.D. Ala. Jan. 19, 2018);
(FCRA plaintiff's claim for emotional distress damages was a potential viable claim);
*Moore v. Equifax Info. Servs. LLC*, 333 F. Supp. 2d 1360, 1365 (N.D. Ga. 2004) (finding
plaintiff's damages due to emotional distress resulting from humiliation and
embarrassment because of Equifax's inaccurate credit report were recoverable under
the FCRA even if the plaintiff consumer suffered no out-of-pocket losses).

In his response, Plaintiff cites to the following testimony regarding the
emotional distress he suffered:

- "I was furious. I was humiliated, it was exasperating […] [t]his has been going
  on for years, it's not this was a bad week or this was a bad day [t]his has been
  years of my life that I've had to deal with this that I had more stress, more
  frustration, a difficult time at home…" Doc. 133-13 at 200.
- "sleepless night, [s]tress, [] frustration, at some points anger over this scenario"
  and described non-resolution of the issue as a "dark cloud over your head…"
  *Id.* at 47, 59.
- "hit a point of exhaustion" and was "infuriated" after "a year of my wife and I
  trying and trying to do this right" but nevertheless, Plaintiff described "my credit
  was diving" and "I had no opportunity to help out around the house with my
  wife and even build my own credit." *Id.* at 55.
- Plaintiff testified he was robbed of a sense of security by "being told that you
  are liable for fraud that you did not do." *Id.* at 50.
- He lost work time to handle his disputes. *Id.* at 43.

Plaintiff's testimony raises genuine issues of material fact as to whether Equifax's conduct caused Plaintiff damages in the form of emotional distress. While Equifax maintains that Plaintiff's stress was caused by other factors, including the co-defendants' conduct and other matters happening in his life, such evidence may be used to challenge Plaintiff's damages through cross examination, but is not a basis for summary judgment on the issue of damages given Plaintiff's testimony.

Regarding Equifax's affirmative defense that Plaintiff failed to mitigate his damages, Plaintiff responds that some banks use a payment made on a disputed account as evidence that there is no fraud and to support finding the account holder liable for the charges. Doc. 140 at 11 (citing *Milgram v. Chase Bank USA, N.A.*, 72 F.4th 1212, 1215 (11th Cir. 2023). Thus, Plaintiff submits that avoiding paying a fraudulent charge refutes Equifax's argument that he failed to mitigate his damages. Given the factual dispute, the issue of mitigation is appropriately left for the jury to decide at trial. Accordingly, it is

**ORDERED**:

1.    Defendant Equifax Information Services LLC's Amended Motion for Summary Judgment (Doc. 133) is **granted** as to Count Six, and Equifax Information Services LLC is entitled to judgment in its favor and against Plaintiff, Anthony Boullosa, as to Plaintiff's claim for violation of 15 U.S.C. § 1681c-2.

2.    In all other respects, Defendant Equifax Information Services LLC's Amended Motion for Summary Judgment (Doc. 133) is **denied**.

3.    To facilitate the rescheduling of this case for trial, within seven (7) days

counsel shall file a joint notice which indicates the months from May 2025 through

June 2026 when they are available for a jury trial.

**DONE AND ORDERED** in Tampa, Florida on March 17, 2025.

Charlene Edwards Honeywell
United States District Judge

Copies to:
Counsel of Record
Unrepresented Parties, if any